## Appellate Department, Superior Court, Los Angeles

[Civ. A. No. 7573.   Apr. 2, 1951.]

R. A. BILICH, Appellant, v. HAROLD A. BARNETT et al., Respondents.

Slane, Mantalica & Davis for Appellant.

Frederick G. Stoehr for Respondents.

STEPHENS, J.—This appeal is from a judgment entered for defendant after plaintiff had failed to amend his third amended complaint following the sustaining of a general demurrer thereto.

This amended complaint sets forth that plaintiff is a duly licensed and qualified contractor; that "defendants held themselves out as and purported to be civil engineers and land surveyors, licensed and with the ability to prepare properly a grade sheet for the work to be done on the job hereinafter mentioned"; that plaintiff entered into a contract with Reliable Trucking Company (apparently the owner of the real property, though there is no allegation of their status

therein), whereby plaintiff agreed to install certain sewer lines for Reliable, and Reliable Trucking Company agreed that they would have defendants prepare survey lines and grade sheets covering the work that was to be done by plaintiff for Reliable; that Reliable Trucking Company paid defendants therefor; that defendants prepared and submitted to plaintiff a certain grade sheet but it was an inaccurate representation of the grade lines on said real property; that such submission was with full knowledge that plaintiff would rely thereon; that said grade sheet was negligently prepared by defendants and did not portray a true representation of the grade sheet as required on the job; that plaintiff relied thereon and "at the finish of the grading plaintiff discovered that the excavation was not as it should be according to the plans and specifications of Reliable Trucking Co."; that as a result thereof plaintiff was required to fill in part of the excavation and incur additional expenditures totaling $382, to his damage in that amount.

Upon this appeal plaintiff relies upon a statement of the rule as set forth in Restatement of Torts, as follows: "Information Negligently Supplied for the Guidance of Others.

"One who in the course of his business or profession supplies information for the guidance of others in their business transactions is subject to liability for harm caused to them by their reliance upon the information if

"(a) he fails to exercise that care and competence in obtaining and communicating the information which its recipient is justified in expecting, and

"(b) the harm is suffered

"(i) by the person or one of the class of persons for whose guidance the information was supplied, and

"(ii) because of his justifiable reliance upon it in a transaction in which it was intended to influence his conduct or in a transaction substantially identical therewith." (Restatement of Torts, Topic 3, § 552.) He contends, in support of this rule, that it is but an extension of the principle that a manufacturer who negligently constructs chattels to be supplied to the public and which are of such nature as to imminently endanger the lives or safety of persons who may be expected to use them is liable for any damage resulting from such negligent construction to persons using them for the purpose for which they were made, even though no privity of contract exists between such manufacturer and the person injured; citing *MacPherson* v. *Buick Motor Co.*, 217 N.Y. 382

[111 N.E. 1050, Ann.Cas. 1916C 440, L.R.A. 1916F 696];
*Dahms* v. *General Elev. Co.* (1932), 214 Cal. 33 [7 P.2d 1013];
*Hall* v. *Barber Door Co.* (1933), 218 Cal. 412 [23 P.2d 279];
*Kalash* v. *Los Angeles Ladder Co.* (1934), 1 Cal.2d 229 [34
P.2d 481]. However, the California cases designate this hold-
ing as a ''well-settled exception'' to the general rule requiring
privity (*Dahms* v. *General Elev. Co., supra,* 214 Cal. at p.
738), and the latter case, after discussing different theories
upon which the holding has been placed by different courts,
says (p. 739) : ''By still others it is placed upon the ground of
the failure of the principal to exercise the ordinary care which
is due to everybody, without regard to contract, under the
Civil Code, and *this seems to be true reason for the rule.*''
(Emphasis added.)

The rule as set forth in the Restatement of Torts, herein-
above set forth, also finds support in Prosser on Torts, page
736, and both place strong reliance upon *Glanzer* v. *Shepard*
(1922), 233 N.Y. 236 [135 N.E. 275, 23 A.L.R. 1425]. In
the case of *Ultramares Corp* v. *Touche* (1931), 255 N.Y. 170
[174 N.E. 441, 74 A.L.R. 1139], the New York Court of Ap-
peals, in an exhaustive opinion written by Cardozo, Chief
Judge (who was also the author of the opinion in *Glanzer* v.
*Shepard*) referred to the latter case as follows: ''In *Glanzer*
v. *Shepard,* the seller of beans requested the defendants, public
weighers, to make return of the weight and furnish the buyer
with a copy. This the defendants did. Their return, which
was made out in duplicate, one copy to the seller and the
other to the buyer, recites that it was made by order of the
former for the use of the latter. The buyer paid the seller on
the faith of the certificate which turned out to.be erroneous.
We held that the weighers were liable at the suit of the buyer
for the moneys overpaid. Here was something more than the
rendition of a service in the expectation that the one who or-
dered the certificate would use it thereafter in the operations
of his business as occasion might require. Here was a case
where the transmission of the certificate to another was not
merely one possibility among many, but the 'end and aim of
the transaction,' as certain and immediate and deliberately
willed as if a husband were to order a gown to be delivered to
his wife, or a telegraph company, contracting with the sender
of a message, were to telegraph it wrongly to the damage of the
person expected to receive it. *Wolfskehl* v. *Western Union
Tel. Co.,* 46 Hun [N.Y.] 542; *De Rutte* v. *New York, Albany*

*& Buffalo Electro Magnetic Telegraph Co.,* 1 Daly [N.Y.] 547; *Milliken* v. *Western Union Tel. Co.,* 110 N.Y. 403, 410 [18 N.E. 251, 1 L.R.A. 281].''

In the Ultramares case the court, while approving the principle above indicated, refused to extend it further to persons generally to whom the information may come and who rely upon it. As the court said (74 A.L.R. at p. 1149) : ''A change so revolutionary, if expedient, must be wrought by legislation.'' While this decision is strongly persuasive, it does not appear to reflect the majority rule in this country. On the contrary, the following statement appearing in the text of 34 American Law Reports at page 67, seems to be supported by the authorities cited in the extensive annotation that follows : ''It has frequently been declared a rule of law that no cause of action in tort can arise from the breach of a duty existing by virtue of a contract, unless there be between the parties a privity of contract, so that a plaintiff can show no wrong done himself for the breach of any duty arising out of a contractual relation, unless he can establish himself as a party or privy to the contract. 20 R.C.L. 49, § 44.

''Following this general principle, the courts generally hold that, because of the absence of privity between the parties, a person making a certificate or record, in the absence of collusion or fraud, incurs no liability toward persons, other than the ones by whom he was employed, who rely thereon, for any negligent errors or omissions therein, causing damage.''

In *19 California Law Review,* in a case note as late as 1930, we find the following statement : ''A few jurisdictions recognize a liability of an abstractor to persons with whom there was no privity of contract for negligence in abstracting a title, when he was aware that this party was being served. *Brown* v. *Sims* (1899), 22 Ind.App. 317 [53 N.E. 779, 72 Am.St.Rep. 308] ; *Denton* v. *Nashville Title Co.* (1903), 112 Tenn. 320 [79 S.W. 799] ; *Anderson* v. *Spriestersbach* (1912), 69 Wash. 393 [125 P. 166, 42 L.R.A.N.S. 176]. Apart from this type of case only two jurisdictions, New Hampshire (*Cunningham* v. *Pease House Furnishing Co.* (1908), 74 N.H. 435 [69 A. 120, 124 Am.St.Rep. 979, 20 L.R.A.N.S. 236]), and New York, recognize liability for negligent misrepresentations where there is no privity of contract. See Carpenter, *Responsibility for Intentional, Negligent, and Innocent Misrepresentation* (1930), 9 Ore.L. Rev. 413, (1930), 24 Ill.L.Rev. 749.''

In the only case which has come to our attention in which the Supreme Court of California has passed upon the question,

the general rule, requiring privity of contract between plaintiff and defendant in order to sustain an action by the former, was followed. In that case, *Buckley* v. *Gray* (1895), 110 Cal. 339 [42 P. 900, 52 Am.St.Rep. 88, 31 L.R.A. 862], the court reviewed and quoted with approval from many authorities from other states. The following excerpts are from pages 343, 344 and 345 of the opinion: ''They [cases previously discussed] show to a demonstration that it is not every one who suffers a loss from the negligence of another that can maintain a suit on such grounds. On the contrary, the limit of the doctrine relating to actionable negligence, says Beasly, C. J., is, that the person occasioning the loss must owe a duty, arising from contract or otherwise, to the person sustaining such loss. Such a restriction on the right to sue for a want of care in the exercise of employments or the transaction of business is plainly necessary to restrain the remedy from being pushed to an impracticable extreme. . . . 'The right of a third party to maintain an action for injuries resulting from a breach of contract between two contracting parties has been denied by the overwhelming weight of authority of the state and federal courts of this country, and the courts of England. To hold that such actions could be maintained would not only lead to endless complications in following out cause and effect, but would restrict and embarrass the right to make contracts, by burdening them with obligations and liabilities to others, which parties would not voluntarily assume.' . . . The only safe rule is to confine the right to recover to those who enter into the contract; if we go one step beyond that, there is no reason why we should not go fifty. . . . 'If third persons can acquire a right in a contract, in the nature of a duty to have it performed as contracted for, the parties will be deprived of control over their own contracts. Plaintiff, not being party to the contract, cannot maintain this action on account of injuries resulting from any breach of duty defendant owed Pickle, arising purely out of the terms of the contract between them.' ''

In the case of *Kircher* v. *Hunter* (1929), 101 Cal.App. 548 [281 P. 1047], it was held that there is no privity of contract between an owner and a subcontractor and, therefore, the former could not maintain an action against the latter for damages consisting of the cost of certain reconstruction work occasioned by defective construction in the laying of tile in two bathrooms. See, also, *Diggs* v. *Pacific Gas & Elec. Co.*

(1922), 57 Cal.App. 57 [206 P. 765]. We find no other decisions in California involving the question.

If it could successfully be contended that a third party may recover the damages he has suffered by the negligent performance of a contract expressly made for his benefit, a question we do not decide, that proposition would not serve the plaintiff here because he has not alleged facts establishing any such contract.

An added reason for sustaining the judgment is found in the special demurrer for uncertainty (VII(1)). The complaint failed to reveal any connection between plaintiff's agreement with Reliable to construct a sewer and "the real property at the corner of Ransom street and Washington Boulevard."

We conclude that the action of the trial court in sustaining the general demurrer to the third amended complaint was proper.

The judgment is affirmed.

Shaw, P. J., and Bishop, J., concurred.