Rockingham,
No. 5706.

PAUL E. SARGENT & a.

*v.*

LOUIS B. JANVRIN & a.

Argued March 5, 1968.
Decided May 29, 1968.

*Burns, Bryant, Hinchey & Nadeau* and *Ross V. Deachman*
( *Mr. Deachman* orally ), for the plaintiffs.

*Perkins, Holland & Donovan* and *William H. M. Beckett* ( *Mr. Beckett* orally ), for the defendants.

GRIMES, J. The defendants were the owners of a tract of land in Hampton Falls, New Hampshire, which they planned to develop. They had constructed a house on Lot No. 7 which they agreed to sell to the plaintiffs on August 19, 1963 and conveyed to them on September 12, 1963 after they took possession. A 115-foot driven well had been installed by a well contractor with twelve years experience on his own and ten years experience working for others. A septic tank and leaching fields were installed by a contractor who did that kind of work and the manufacturer of the concrete tank. At the time of the sale of the house the sewage system had not been put to use.

A few weeks after plaintiffs moved in, the water became cloudy, discolored and developed an odor. A test made on December 16, 1963 indicated contamination. The contamination was traced to the sewage system. Defendants unsuccessfully attempted to correct the situation by sealing the well to a depth of seventy feet. Examination of the pipe from the house to the tank revealed nothing wrong, but a later investigation showed that the outlet pipe was the perforated type and was not sealed and that due to a ledge which caused a rise in the pipe leading to the leaching field, no effluent had gone beyond that point which was only twenty-five feet from the tank and seventy feet from the well. This caused the ground to become saturated with effluent and contaminate the well. This was corrected by installation of a new outlet pipe which carried the effluent to leaching fields some distance from the well. The contamination of the well from the saturated ground continued but appeared to be diminishing at the time of hearing. The master found that contamination would probably continue and it could not "be determined with accuracy when the water will be fit to drink."

The plaintiffs have continued to live in the house and to use the water for purposes other than drinking. They have carried their drinking water from the town supply in three-gallon containers.

The verdict of $1,500 includes $1,248.36 for expenses in correcting the trouble, testing of the water, and transporting drinking water for use in the house. The balance was for additional future expense.

The dismissal of the count based upon fraud was proper. The evidence showed that the defendants did not know of the true situation regarding the septic tank system and therefore did not make a deliberately false statement when they told plaintiffs that the system was adequate. Neither did the evidence compel a finding that defendants made a negligent representation. They hired people in whom, it is findable, they reasonably had confidence to install the system and reasonably assumed that the installation had been done properly. The granting of defendants' request number 19 that they had made "no negligent misrepresentations" was supported by the evidence.

We have not found in New Hampshire cases a clearly expressed rule as to the measure of damages for breach of warranty with respect to the sale of real property. The rule with respect to chattels has been stated to be the difference between the actual value of the goods at the time of sale and what they would have been worth if they had corresponded to the warranty, together with such incidental losses as the parties knew or ought to have known would probably result from a failure to comply with the terms of the agreement. In this case the master awarded this difference by allowing the cost of remedying the defect and the incidental expense including the carrying of the water. The method, adopted by the master, was reasonable. *Danforth* v. *Freeman*, 69 N. H. 466, 470.

The evidence relating to loss of market value due to the effect of the water problem on the reputation of the property was properly excluded as not being within the contemplation of the parties. The denial of plaintiffs' motion to reopen filed after the master's report to introduce evidence of tests made after trial discloses no abuse of discretion. *Ricker* v. *Mathews,* 94 N. H. 313, 316; *Twardosky* v. *Company,* 95 N. H. 279.

*Exception overruled.*

All concurred.